**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DAREL NELSON**                                                                                          **PLAINTIFF**

**v.**                                              **4:05CV01835-WRW**

**UNITED STATES DEPARTMENT OF
HOMELAND SECURITY**                                                                        **DEFENDANTS**

**ORDER**

Pending is Defendant's Motion for Summary Judgment (Doc. No. 3-1). Plaintiff, acting *pro se*, asserts that he was subjected to a hostile work environment, race discrimination, and retaliation. Plaintiff does not specify under which law he brings his case, so it will be treated as arising under Title VII. For the reasons set forth below, Defendant's Motion for Summary judgment is GRANTED.

**I.    HISTORY**

Plaintiff, an African American, was hired by the Transportation Security Administration ("TSA") as a security screener for the Little Rock National Airport on September 29, 2002.[1] All new hires were placed on a one-year probationary period, pending successful completion of a security background investigation, which included a criminal and credit history check.[2] In his credit questionnaire, Plaintiff disclosed two delinquent accounts,[3] but failed to disclose a $9,660 debt and

---

[1] Doc. No. 4, p. 2.

[2] Doc. No. 3-11; 49 U.S.C.A. § 44936; *see also* Aviation and Transportation Security Act Public Law 107-71, § 111.

[3] Doc. No. 6-4, p. 14.

1

a repossession on a $14,321.00 debt. Defendant maintains that this failure to disclose precipitated Plaintiff's termination.[4] Plaintiff contends that his termination was discriminatory and in retaliation for engaging in protected conduct.

Plaintiff cites several incidents that he alleges created a hostile work environment, involving his Supervisor, Richard Whitthuhn: (1) he singled Plaintiff out of a group during a designated lunch break, and asked him why he was not working;[5] (2) he told Plaintiff that it did not look good to sit down while on duty; (3) he ordered Plaintiff to stand throughout his work shift;[6] (4) he directed Plaintiff to work in areas that aggravated a pre-existing illness,[7] and (5) he challenged the validity of a pre-approved five hour leave-of-absence.[8] Finally, Plaintiff alleges that on June 23, 2003, Mr. Whitthuhn approached him with balled up his fists and scolded him in a loud voice telling him to "check ever [sic] damn bag, never tell anyone you were checking certain bags."[9] Plaintiff maintains that he filed a police report immediately following this incident.[10]

Plaintiff's other allegations include allegedly overhearing a conversation where the word

---

[4]Doc. No. 1.

[5]*Id.*

[6]Doc. No. 3-2; Doc. No. 3-1 p. 4.

[7]Doc. No. 1; Doc. No. 3-1; (Plaintiff never states specifically what the illness was or how it affected him).

[8]*Id.*

[9]Doc. No. 3-2.

[10]Doc. No. 1 (The police report has not been provided; therefore, it is impossible to determine whether Plaintiff filed a formal police report and, if he did, whether he alleged discrimination in the report.).

"nigger" was used in reference to another employee,[11] and overhearing Mr. Whitthuhn call an African-American female a "black bitch."[12] Plaintiff also describes separate occasions where Mr. Whitthuhn became hostile with other African-American employees -- an employee working in baggage[13] and a sky cap working curbside.[14]

In May 2003, Plaintiff received a letter from DynCorp, the company contracted to conduct credit history investigations.[15] The letter notified Plaintiff that his background check had disclosed "financial irresponsibility," and warned that, without a timely response justifying his credit history, Plaintiff would be found unsuitable for employment.[16] Plaintiff responded to the letter, but was only able to show that he had paid $294.00 of the total debt.[17] On July 7, 2003, in a letter sent by Thomas Melhern, Director of Employee Relations Services, Plaintiff was terminated for "dishonesty and failure to disclose credit history."[18] Plaintiff alleges that a similarly situated white employee was not fired for a poor credit report, and that he was actually fired in retaliation for filing a police report against Mr. Whitthuhn. Plaintiff maintains that he was unfairly terminated because he

---

[11] Doc. No. 1.

[12] Doc. No. 1 (Plaintiff does not explain whether he heard this comment himself or whether he is just repeating a rumor); *see also* Affidavit of Sprigs Edmond, Jr. Doc. No. 3-8, p. 3.

[13] *Id.* (No further information given).

[14] *Id.*

[15] Doc. No. 6-2.

[16] *Id.*

[17] Doc. No. 3-14.

[18] Doc. No. 3-11.

truthfully answered all questions asked on the questionnaire and that no credit report was ever requested.[19]   Plaintiff first contacted an EEO Counselor on August 1, 2003,[20] and filed a formal complaint in late December 2003.  In this complaint, Plaintiff alleged that the last discriminatory incident took place on June 23, 2003.[21]  His allegations were initially investigated by Patricia Wade, an EEO Counselor.[22] Ms. Wade's report was reviewed by Defendant, who notified Plaintiff by letter issued April 16, 2004, that three of his allegations had been accepted for formal investigation.[23] Pearl Logan, the EEO Investigator, notified Plaintiff in writing that she would be investigating his complaints.[24] Specifically, Ms. Logan noted three complaints: (1) Plaintiff was subjected to a hostile work-environment; (2) Plaintiff was discriminated against because of his race when he was terminated ; and (3) Plaintiff's termination was the result of retaliation for complaining about unfair treatment.  After this, Defendant issued a decision on August 30, 2005, finding that there was insufficient evidence to support Plaintiff's claims of discrimination, hostile work environment, and retaliation.[25]  Plaintiff filed the present lawsuit on November 29, 2005.

---

[19]Doc. No. 5-1.

[20]Doc. No. 3-10.

[21]Doc. No. 3-3.

[22]Doc. No. 3-10.

[23]Doc. No. 3-4.

[24]Doc. No. 3-2.

[25]Doc. No. 3-5.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[26] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[27]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[28] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[29] I must view the facts in the light most favorable to the party opposing the motion.[30] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[26] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[28] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[29] *Id.* at 728.

[30] *Id.* at 727-28.

showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[31]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[32]

## III.    DISCUSSION[33]

### A.    Hostile Work Environment

In order to establish a *prima facie* case of hostile work environment, Plaintiff must prove that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of his employment; and (5) insofar as co-worker harassment was involved, Defendant knew or should have known of the harassment and failed to take proper remedial action.[34]

A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult."[35] "To be actionable, such conduct must be shown to occur with such frequency that the very conditions of employment are altered" and are unreasonably hostile.[36] The Eighth

---

[31] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[32] *Anderson*, 477 U.S. at 248.

[33] Defendant raises an exhaustion argument, but, after liberally reviewing the pleadings, I believe that Plaintiff has exhausted his administrative remedies. *See Nichols v. American National Insurance Co.*, 154 F.3d 875, 886 (8th Cir. 1998) (Plaintiff may seek relief for any discrimination claim which grows out of or is reasonably related to the allegations in the administrative complaint.).

[34] *Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005).

[35] *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003).

[36] *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 893 (8th Cir. 2005).

Circuit has held that intermittent racial slurs, alone, do not render an environment objectively hostile as a matter of law.[37] A hostile work environment claim by its very nature involves repeated conduct over a period of time.[38] Moreover, "[a]n unpleasant work environment, and an unpleasant supervisor, are not equivalent to a hostile work environment."[39]

Plaintiff claims that he was subject to unwelcome harassment by his supervisor, Mr. Whitthuhn.[40] In particular, Plaintiff alleges that Mr. Whitthuhn used the term "nigger" at least once and was overheard agreeing that a female employee was a "black bitch." Plaintiff has only cited to a couple of isolated incidents, and he has not shown that the action was directed at him because of his race.[41] Plaintiff's remaining complaints arise from verbal reprimands, which he perceived as harassing assaults by Mr. Whitthuhn.[42] The alleged remarks, although inappropriate, were infrequent, isolated, and offhand remarks not specifically directed at Plaintiff.[43] The facts, when

---

[37]*Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (affirming grant of summary judgment in claim for racial hostile work environment where comments alleged were not directed at the plaintiff and were "sporadic, no more than one per month, . . . were used in reference to customers, competitors, or other employees . . . [and] were merely overheard by [plaintiff]").

[38]*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002); *see also Jensen v. Henderson*, 315 F.3d 854 (8th Cir. 2002).

[39]*Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 967 (8th Cir. 1999).

[40]Doc. No. 1.

[41]*Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005).

[42]*See* Doc. No. 1.

[43]*See*, *e.g.*, *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004) (holding three isolated incidents of racial slurs not directed at plaintiff do not create a hostile environment); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981) (holding racial comments that are merely part of casual conversation or are sporadic do not trigger Title VII's sanctions).

7

viewed in the light most favorable to Plaintiff, are insufficient to establish a *prima-facie* case of a hostile work environment.  Summary Judgment on the claim of hostile work environment is GRANTED.

**B.     Discrimination**

Plaintiff contends that he was discriminated against based on his race.  Title VII prohibits an employer from treating an employee differently with respect to the "terms, conditions, or privileges of employment" because of her race.[44]  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."[45]  In order to establish a *prima facie* case of racial disparate treatment, the plaintiff must prove (1) that he is a member of a protected class; (2) that he was qualified to perform his job; (3) that he suffered an adverse employment action; and (4) that the defendant treated similarly situated, non-minority employees more favorably.[46]

Defendant argues that because the screener position was one of "public trust, honesty, and trustworthiness,"[47] the TSA required each applicant to undergo and pass a full background check as a condition of employment.  In fact, Plaintiff understood that he was hired subject to the successful completion of a background and credit check.[48]  The TSA determined that Plaintiff was not suitable for the screener position and revoked his probationary position due to (1) the

---

[44] 42 U.S.C. § 2000e-2(a)(1).

[45] *Bradley v. Widnall*, 232 F.3d 626, 633.

[46] *LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 693 (8th Cir. 2001).

[47] Doc. 3-1 at p. 19.

[48] Doc. No. 3-1; Doc. No. 3-11.

unsuccessful completion of the security background check; (2) Plaintiff's failure to disclose delinquent accounts (over 180 days);[49] (3) Plaintiff's failure to respond to the TSA when, by letter of May 16, 2003, the Plaintiff was advised of the delinquent accounts; and (4) Plaintiff's failure to dispute, resolve, or show a good faith effort to mitigate the financial issues.[50]

In this case, there is no question that Plaintiff, an African-American, is a member of a protected class. However, Plaintiff failed to create an inference that he was qualified to perform the job because of his dubious financial history and dishonesty on his background check. Plaintiff contends that Defendant treated a similarly situated, non-minority employee, Ray Kenny ("Kenny"), differently than him.

Defendant maintains that it had a legitimate, non-discriminatory reason for dismissing Plaintiff and for treating Kenny differently -- mainly that Kenny was not similarly situated because Kenny "sought the assistance of a credit agency and was able to repair his credit history and provided evidence of same."[51] In contrast, Plaintiff provided no proof that he had resolved or attempted to mitigate his credit issues. Defendant also points out that Kenny disclosed his full indebtedness on his credit questionnaire, while Plaintiff did not.

---

[49]Doc. No. 6-4, p. 14.

[50]*See* Doc. No. 6-5, p .4 (The TSA Human Resources Management Policy Manual provides that screening personnel can be terminated at any time during their respective probationary or trial periods.).

[51]Doc. 3-1, p. 18; *see also* Doc. No. 3-12.

Defendant has met its burden of establishing a legitimate non-discriminatory purpose for terminating Plaintiff as required under the *McDonnell Douglas* framework.[52] Summary Judgment is GRANTED on the claim of discrimination.

**C.     Retaliation**

Plaintiff claims that his termination was motivated by retaliation for engaging in protected activity -- filing an internal complaint against Mr. Whittuhn.[53]  Because it has already been determined that Plaintiff was not qualified for the position, retaliation will not be addressed.

**III.     Conclusion**

Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 15th day of August, 2006.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[52]*McDonnell Douglas*, 411 U.S. 792.

[53]Doc. No. 1.